UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SALVADOR LOPEZ ROSAS,

            Plaintiff,

    v.

CAROLYN W COLVIN,

            Defendant.

Case No.  15-cv-00231-WHO

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 18, 24

## INTRODUCTION

The parties have cross-moved for summary judgment in this Social Security appeal.  I find that the Administrative Law Judge ("ALJ") committed error by (1) improperly discounting plaintiff's allegations of the severity of his symptoms, (2) improperly discounting the testimony of plaintiff's ex-wife, and (3) failing to include in the vocational hypothetical the ALJ's own findings that (i) plaintiff has moderate difficulties in concentration, persistence, and pace, and (ii) is illiterate.  I therefore GRANT plaintiff's motion, DENY defendant's motion, and REMAND this case for further proceedings.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On May 17, 2011, Lopez Rosas filed an application for disability insurance benefits and supplemental security income under the Social Security Act.  Administrative Record ("AR") 191.  The Social Security Administration ("SSA") denied both claims, first on September 1, 2011, and again upon reconsideration on February 13, 2012.  AR 156, 169.  Lopez Rosas requested a hearing and appeared before ALJ Amita Tracy on February 7, 2013.  AR 659.  On April 26, 2013, the ALJ issued a decision finding that Lopez Rosas was not disabled.  AR 26.  The ALJ's decision became the Commissioner's final decision when the Appeal's Council denied Lopez Rosas's request for

United States District Court
Northern District of California

1   review on December 12, 2014.  AR 5.

2        Lopez Rosas filed this action on January 15, 2015 and moved for summary judgment on

3   May 26, 2015.  Dkt. Nos. 1, 18.  The Commissioner cross-moved for summary judgment on

4   August 21, 2015.  Dkt. No. 24.

5   **II.    LOPEZ ROSAS'S BACKGROUND AND IMPAIRMENTS**

6        Lopez Rosas alleges a disability onset date of May 1, 2010.  AR 191.  At the ALJ hearing

7   on February 7, 2013, Lopez Rosas testified that his only education was completing the sixth grade

8   in Mexico.  AR 674.  Lopez Rosas also testified that he lives with his ex-wife and receives his

9   only income from taking care of her.  AR 670-71.  In this capacity, he works for approximately

10  one hour per day, for a total of 30 hours per month.  AR 671.  Prior to the onset of his alleged

11  disability, Lopez Rosas worked primarily in landscaping and fieldwork.  AR 676.  He held various

12  jobs, such as cleaning grapes for a winery, tomato packing, yard work, and pumping gas.  AR 675-

13  676.  He stopped working on October 30, 2010 after he was laid off, but would have quit soon

14  thereafter because of his inability to work caused by back and spine problems.[1]  AR 207, 676.  He

15  takes 11 different kinds of pills to treat his pain and nervousness, and uses an inhaler for asthma.

16  AR 679.  For his mental health, Lopez Rosas takes Prozac, Celexa, Lorazepam, and Ambien.  AR

17  680.  His pills do not alleviate his back pain, but he has had six shots to his spine that have helped

18  "a little bit."  AR 680.  He has attended physical therapy for his back, which also helped "a little

19  bit," and he does not need a cane to move around.  AR 682.

---

21  [1] Because Lopez Rosas has limited English proficiency, his testimony at the ALJ hearing
    regarding why he stopped working is not completely clear.  Specifically, the conversation was as
22  follows:

23         ALJ:             Why did you stop working?
           Lopez Rosas:  Because I had (INAUDIBLE) so bad in my back and my spine.
24         ALJ:             Okay.  Medical problems made you stop? You weren't laid off
                            from your job?"
25         Lopez Rosas:  If he did not lay me off I lay off myself because I cannot—I'm not
                            going to make it work, I don't make it work.

26
27  AR 676.  In his Motion, Lopez Rosas explained his testimony, stating, "that because of his
    medical problems, had he not been laid off, he'd have laid himself off."  Plaintiff's Motion (Dkt.
    No. 18) at 21.  The Commissioner does not dispute or respond to Lopez Rosas's explanation in her
28  Cross-Motion, other than to argue that "Plaintiff's work record refuted his claim."  Defendant's
    Motion (Dkt. No. 24) at 10.

United States District Court
Northern District of California

1    Lopez Rosas further testified that his household chores include cleaning the bathroom,

2  sweeping the kitchen, cooking, cleaning dishes, doing laundry, and grocery shopping.  AR 685-

3  686.  He spends between one hour and one hour and 20 minutes each day doing chores.  AR 687.

4  He is unable to work uninterrupted because he gets tired and has to lie down for regular breaks.

5  AR 685, 688.  He leaves his home to grocery shop, go to church, attend doctors' appointments,

6  and run small errands like picking up cigarettes for his ex-wife.  AR 686-88.  His only hobby is

7  watching television, which he does frequently by alternating between sitting and lying down.  AR

8  686, 689-90.  He spends a lot of time watching television because of his anxiety and depression.

9  AR 690.

10    Lopez Rosas filed claims for disability insurance benefits and supplemental security

11  income on May 17, 2011.  AR 191.  On June 22, 2011, Lopez Rosas filled out a Function Report

12  that details his symptoms and daily activities.  AR 226-233.  A typical day starts when he wakes

13  up at 10:00 a.m.  AR 226.  He watches television until noon, when he leaves for a doctors'

14  appointment if he has one.  AR 226.  He watches more television until he cooks dinner, and then

15  watches more television until he goes to bed.  AR 226.  His household chores include feeding and

16  watering the pet, cooking, doing laundry, cleaning dishes, sweeping the floor, and mowing the

17  lawn.  AR 227-28.

18    Regarding his physical limitations, Lopez Rosas indicated on his Function Report that he

19  cannot bend down, sit, or stand for extended periods of time.  AR 227.  He indicated trouble with

20  lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, memory,

21  completing tasks, concentration, understanding, following instructions, and getting along with

22  others.  AR 231.  He reported that he can only lift 5-10 pounds, and can only walk approximately

23  one block before he has to rest.  AR 231.

24    Regarding his mental limitations, Lopez Rosas indicated that he does not handle stress well

25  because he has trouble listening and understanding.  AR 232.  Similarly, changes in routine "mess

26  [him] up" and make him angry.  AR 232.  He is unable to follow written instructions because he

27  has difficulty understanding, and needs to be given verbal instructions three or more times before

28  he understands.  AR 231.  He is only able to sustain attention for 20 minutes or less.  AR 231.  His

United States District Court
Northern District of California

only social activity is speaking with his brother on the phone twice a week. AR 230. He has problems getting along with others because his pain and mood fluctuations cause him to get angry, but he gets along well with authority figures. AR 231, 232. He is able to pay bills and count change, but needs assistance managing his savings and filling out a checkbook. AR 229.

Lopez Rosas's ex-wife, Frances Lopez, also filled out a Function Report on June 22, 2011 that substantiates Lopez Rosas's claims. AR 234-241. In addition, Ms. Lopez Rosas states that she has to remind Lopez Rosas to shower, shave, and take his medicine. AR 236. She and Lopez Rosas take turns cooking dinner. AR 234. She indicates that Mr. Lopez Rosas goes grocery shopping once a week. AR 237.

At the request of the SSA, on July 31, 2011, Lopez Rosas saw a psychological consultative examiner, Dr. Janet Cain, who evaluated his mental health. AR 292. Dr. Cain reported that Lopez Rosas is moderately impaired with regard to social functioning, AR 293, 294, and that Lopez Rosas is moderately depressed, but not overly anxious. AR 293. Dr. Cain stated that Lopez Rosas may have work attendance issues because of his physical limitations and the depression stemming from those limitations. *Id*. He may also "have difficulty responding appropriately to coworkers, supervisors, and the general public secondary to his mood disorder." *Id*. With regard to judgment, Dr. Cain indicated that Lopez Rosas is "grossly impaired." *Id*. Lopez Rosas's intellect, however, "is sufficiently intact to understand, carry out, and remember simple instructions." *Id*. Similarly, he "should be able to respond appropriately to routine changes in the routine work setting as well as safety concerns." *Id*.

The SSA also requested that Lopez Rosas see Dr. Fariba Vesali, an orthopedic consultative examiner. AR 295. In a report dated July 28, 2011, Dr. Vesali opined that Lopez Rosas has no physical limitations, explaining that Lopez Rosas "should be able to walk stand, and sit . . . does not need an assistive device . . . [and] should be able to lift/carry with no limitations." AR 298. In addition, "[t]here are no postural limitations . . . manipulative limitations . . . [or] workplace environmental limitations." AR 298.

Lopez Rosas has been a regular patient at the Community Health Clinic Ole and sees Physicians' Assistant ("PA") Mara Adelman for his physical and mental ailments. AR 340-394;

582-612.  On August 28, 2012, PA Adelman and Dr. Colleen Townsend, a physician at the clinic, filled out a checklist entitled "Medical Source Statement Concerning the Nature and Severity of [Lopez Rosas's] Mental Impairment," marking boxes to indicate Lopez Rosas's impairment level in a number of categories.  AR 532-536.  Under the category of "Understanding and Memory," they indicated impairments ranging from "mild" to "moderately severe," noting a moderately severe impairment for "ability to understand and remember detailed instructions."  AR 533. Under "Sustained Concentration and Persistence," they indicated impairments ranging from "mild" to "moderately severe," noting a moderately severe impairment for the ability to maintain concentration.  *Id*.  They indicated impairments ranging from "mild" to "moderate" with regard to "Social Interaction."  Regarding "Adaptation," they indicated impairments ranging from "mild" to "moderate."  *Id*. at 534.  Finally, they indicted that Lopez Rosas has a "substantial loss" in: (1) the ability "to understand, remember, and carry out simple instructions"; (2) the ability "to make judgments that are commensurate with the functions of unskilled work"; (3) the ability "to respond appropriately to supervision, co-workers and usual work situations"; and (4) the ability "to deal with changes in a routine work setting."  AR 535.  Neither PA Adelman nor Dr. Townsend provided any written comments in the space provided.  AR 536.

Lopez Rosas's has also sought specialized treatment for his back pain, resulting in the diagnosis of a sacral mass near his lower back, likely a benign tumor.  AR 310-11; 314-15; 327-30; 539-61.  He has had numerous MRIs of his back, dated July 1, 2011, January 11, 2012, February 7, 2012, and September 5, 2012.  AR 314, 545-546, 557, 558-561.  Those images have revealed other problems with Lopez Rosas's lower back.  On January 16, 2012, a UCSF Chart Summary Report indicated that Lopez Rosas suffers from severe neuroforaminal stenosis bilaterally at the L4-L5 discs, and from desiccation of the L3-L4 and L4-L5 discs.  AR 314-15. During the MRI exam on February 7, 2012, Lopez Rosas displayed severe disc degenerative and facet degenerative changes of the cervical spine in the C4-5 discs, and mild to moderate desiccation from C3-4 through C6-7.  AR 545-46.  Lopez Rosas also indicated during the ALJ hearing that he suffers from sleep apnea, AR 678, masses in his lungs from smoking (although he has since quit), AR 678, 682-83, and had recent gall bladder surgery.  AR 681.

United States District Court
Northern District of California

### III.   DISABILITY DETERMINATION

#### A.   The Five-Step Inquiry

A claimant is "disabled" if:  (i) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (ii) the impairment is "of such severity the he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 1382c(a)(3)(A)-(B).  An ALJ engages in a five-step sequential analysis to determine whether a claimant is disabled.  *See* 20 C.F.R §§ 404.1520(a) and 416.920(a).

In the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity ("SGA").[2]  20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).  If the claimant is not engaging in SGA, the ALJ determines in step two whether the claimant suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  In step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in the administrative regulations.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, App. 1; *see also* 20 C.F.R. §§ 404.1525 and 416.925.  If the claimant satisfies the criteria of a listed impairment, he is disabled; if not, the ALJ proceeds to the next step.

Before step four, the ALJ determines the claimant's Residual Functional Capacity ("RFC"), which is his ability to perform physical and mental work activities on a sustained basis despite the limiting effects of his impairments.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  In making this finding, the ALJ considers all the evidence in the record including the claimant's severe and non-severe impairments.  20 C.F.R. §§ 404.1520(e), 404.1545; 416.920(e), and 416.945.  At step four, the ALJ determines whether the claimant has the RFC to perform the

---

[2] Substantial activity is defined as work requiring significant physical or mental activity.  20 C.F.R. §§ 404.1572(a) and 416.972(a).  Gainful activity is "work usually done for pay or profit," regardless of whether the claimant is actually compensated.  20 C.F.R. §§ 404.1572(b) and 416.972(b).

requirements of his "past relevant work."³  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

If the claimant cannot perform his past work, the ALJ determines in step five whether the claimant

can perform any other work existing in the national economy considering his RFC, age, education,

and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).  If the claimant is

able to do other work, he is not disabled.

**B.    The ALJ's Decision**

Lopez Rosas does not challenge the ALJ's decision at steps one through three.  At step

one, the ALJ found that Lopez Rosas was not engaged in SGA.  AR 18.  At step two, the ALJ

found that Lopez Rosas had a combination of severe impairments:

> [C]hronic neck, low back and shoulder pain; degenerative disc disease of the
> lumbar spine; tumor or right sacral mass (Exhibit 16F/26-27); disc desiccation at
> L4-5 and L5-S1; decreased range of motion of the left shoulder; bilateral neural
> foraminal stenosis at L4-5; cervical spine multi-level disc space narrowing and
> dessication [sic] of mild to moderate severity; lumbar spine multi-level facet
> degenerative changes; left shoulder decreased range of motion; history of chronic
> obstructive pulmonary disease ("COPD") and asthma; depression; anxiety; and
> sleep apnea.

AR 17-18.  At step three, the ALJ found that this combination of impairments did not meet the

criteria for disability listed in the administrative regulations.  AR 19.  The ALJ did note, however,

that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties."

AR 19.

Instead, Lopez Rosas challenges the ALJ's RFC finding and her decision at step five.  The

ALJ found Lopez Rosas had the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except
> he should have no exposure to atmospheric conditions and no exposure to hazards
> in the workplace, defined as moving machinery and unprotected heights; is limited
> to simple, routine, repetitive tasks; and he is able to understand and communicate in
> limited English.

AR 20.  In determining Lopez Rosas's RFC, the ALJ engaged in a detailed discussion of the

---

³ "Past relevant work" means substantial gainful activity performed (either as the claimant actually
performed it or as it is generally performed in the national economy) within the last fifteen years
or fifteen years prior to the alleged disability onset date.  20 C.F.R. §§ 404.1560(b), 404.1565,
416.960(b), and 416.965.

testimony in the record. She found Lopez Rosas's characterization of his physical limitations only "partially credible" because, in addition to other reasons, "his activities of daily living indicate that he can do more than he alleges." AR 21 (internal citations omitted). Similarly, the ALJ found the statement of Lopez Rosas's ex-wife "generally credible as it corroborates claimant's activities of daily living," but found that "the evidence shows that claimant is not as limited as alleged." AR 22. The ALJ granted Dr. Cain's psychological evaluation only "partial weight" because, "[c]laimant's activities of daily living show that the moderate limitations in daily living and independent living skills given by Dr. Cain are not supported by the record," and because "the moderate social limitations given by Dr. Cain are not supported by the record." AR 24. With regard to Dr. Vesali's evaluation of Lopez Rosas's physical limitations, the ALJ granted it "little weight, as Dr. Vesali did not have the benefit of the updated medical evidence." AR 24. Finally, the ALJ granted PA Adelman and Dr. Townsend's evaluation of Lopez Rosas's mental limitations only "partial weight," because, in addition to other reasons, they "exaggerate[] the extent of claimant's mental limitations" and "the treatment notes and claimant's significant activities of daily living do not support these substantial limitations." AR 25.

At step four, the ALJ found that Lopez Rosas is not able to perform any of his past relevant work in light of Lopez Rosas's RFC. AR 25. She also found that Lopez Rosas "is illiterate and is able to communicate in English." AR 25.

At step five, the ALJ relied on testimony of a vocational expert and determined that Lopez Rosas is capable of performing other work existing in significant numbers in the national economy. AR 25. Specifically, the ALJ posed the following hypothetical:

> So, let's assume we have a hypothetical individual with the past jobs that you described. Further assume that this individual is limited to medium work, except the individual should have no exposure to atmospheric conditions and no exposure to hazards in the work place defined as moving machinery and unprotected heights. And the individual is also limited to simple, routine, repetitive tasks. And also the individual has limited ability to communicate in English, to understand and communicate in English.

AR 693-94. The vocational expert opined that Lopez Rosas could do the work of a hand packer, with 676,000 jobs in the national economy and 93,000 jobs in California, grocery bagger, with

1  250,000 jobs in the national economy and 21,500 jobs in California, and sandwich maker, with

2  108,000 jobs in the national economy and 3,500 jobs in California.  AR 694-95.  The ALJ did not

3  include in her hypothetical to the vocational expert her finding that Lopez Rosas had moderate

4  limitations with respect to concentration, pace and persistence.  Other than noting that Lopez

5  Rosas had limited ability to communicate in and understand English, the ALJ also did not include

6  in the hypothetical her finding that he was illiterate.

7                                    **LEGAL STANDARD**

8         Under 42 U.S.C. § 405(g), district courts have jurisdiction to review the final decisions of

9  the Commissioner of Social Security.  The Commissioner's decision must be upheld unless the

10  determination is not supported by substantial evidence or is based on legal error.  *See* 42 U.S.C. §

11  405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996).

12         Substantial evidence is "more than a mere scintilla, but less than a preponderance." *Saelee*

13  *v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal quotations and citations omitted).  Substantial

14  evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

15  conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations

16  omitted).  A court must review the record as a whole and consider adverse as well as supporting

17  evidence.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (a reviewing court

18  "may not affirm simply by isolating a specific quantum of supporting evidence.") (internal

19  quotations and citations omitted).  Where "evidence is susceptible to more than one rational

20  interpretation," the ALJ's decision must be upheld.  *See Morgan v. Comm'r of the Soc. Sec.*

21  *Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

22         Legal error occurs when an ALJ "breaches its special duty to fully and fairly develop the

23  record and to assure that the claimant's interests are considered, resulting in non-harmless legal

24  error to the applicant." *Hassan v. Colvin*, No. 12-cv-05821-RS, 2015 WL 2358023, at *1 (N.D.

25  Cal. May 15, 2015) (internal quotations and citations omitted).  Reversal is not warranted if the

26  legal error is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674

27  F.3d 1104, 1115 (9th Cir. 2012) (internal quotations omitted).

28

United States District Court
Northern District of California

9

United States District Court
Northern District of California

**DISCUSSION**

Lopez Rosas makes several challenges to the ALJ's conclusions regarding the RFC determination and step five analysis: (1) the ALJ improperly discredited lay testimony from Lopez Rosas and his ex-wife; (2) the ALJ improperly discredited testimony from Lopez Rosas's treating physician; and (3) the ALJ improperly failed to include in the vocational hypothetical her own findings that (i) Lopez Rosas has moderate deficits in concentration, persistence, and pace, and (ii) Lopez Rosas is illiterate.  I address each argument in turn.

**I.   THE ALJ ERRED IN DISCREDITING THE TESTIMONY OF LOPEZ ROSAS AND HIS EX-WIFE CONCERNING THE INTENSITY, PERSISTENCE, AND LIMITING EFFECTS OF HIS SYMPTOMS.**

Lopez Rosas argues that the ALJ erred in finding that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  Dkt. No. 18 at 19.  Similarly, Lopez Rosas argues the ALJ erred in finding that corroborating statements made by his ex-wife were also not entirely credible.  Dkt. No. 18 at 15.

**A.  Lopez Rosas's Testimony.**

The ALJ must engage in a two-step analysis when evaluating a claimant's credibility.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* at 1036 (internal quotations omitted).  Second, if the claimant has met the first step and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.* (internal quotations omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).[4]  An ALJ must "specifically identify what testimony is

---

[4] In her cross-motion, the Commissioner concedes that the Ninth Circuit requires an ALJ to state "specific, clear and convincing reasons" when discrediting a claimant's testimony, but she nevertheless asserts that this standard is too strict.  Defendant's Motion at 9.  Instead, "the Commissioner continues to believe" that the correct standard was "specified by the agency in Social Security Ruling 96-7p," which requires no more than "sufficiently specific [reasons]."  *Id.* (citing SSR 96-7P at 2 (S.S.A. 1996)).  Because I cannot ignore binding Ninth Circuit precedent, I apply the "clear and convincing" standard.

1    credible and what testimony undermines claimant's complaints." *Morgan*, 169 F.3d at 599.

2        The ALJ may consider many factors when weighing credibility, including "reputation for

3    truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and

4    unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of

5    treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotations omitted).  An

6    ALJ's assessment of a claimant's credibility and pain severity is entitled to great weight.  *See*

7    *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

8        Lopez Rosas testified that he cannot do household chores for a sustained period of time,

9    requiring frequent rest breaks.  AR 685, 688.  He also claims that he cannot lift more than 5-10

10   pounds or walk more than a single block without taking a rest break.  AR 231.  Similarly, Lopez

11   Rosas claims he is unable to sustain a sitting, squatting, or standing position.  AR 227.  The ALJ

12   found that "the claimant's medically determinable impairments could reasonably be expected to

13   cause the alleged symptoms."  AR 21.  The ALJ went on to conclude that "claimant's statements

14   concerning the intensity, persistence and limiting effects of these symptoms are not entirely

15   credible for the reasons explained in this decision."  *Id.*  However, the ALJ did not specifically

16   identify which statements regarding Lopez Rosas's symptoms she found lacking in credibility.  *Id*.

17   Instead, in explaining why Lopez Rosas is only "partially credible," the ALJ stated:

18           His activities of daily living indicate that he can do more than he alleges.  His
19           highest earnings were in 2008-2009. He stopped working on October 30, 2010
             because he was laid off, not because of his condition.  He continued to take care of
20           his ex-wife, despite his impairments.  He gave different reasons for why he stopped
             working at the orthopedic and psychological CEs.

21   AR 21 (citations omitted).

22       The ALJ's analysis is insufficient from the outset because nowhere does she identify which

23   of Lopez Rosas's "statements concerning the intensity, persistence and limiting effects" of his

24   symptoms she finds lacking in credibility, despite the requirement that an ALJ "*specifically*

25   identify which of the plaintiff's statements she found incredible and why." *Jesus v. Colvin*, No.

26   14-CV-03820-JSC, 2015 WL 4999501, at *6 (N.D. Cal. Aug. 20, 2015) (emphasis original)

27   (citing *Brown-Hunter v. Colvin*, 798 F.3d 749, 757 (9th Cir. 2015)); *see also Morgan*, 169 F.3d at

28

United States District Court
Northern District of California

1   599.  Without discussing which symptoms she believes are exaggerated, the ALJ necessarily fails

2   to provide "clear and convincing" reasons for disbelieving Lopez Rosas's allegations with regard

3   to those symptoms.  Even if the ALJ had identified specific testimony from Lopez Rosas

4   regarding his limitations, however, none of the justifications the ALJ provides are clear and

5   convincing.

6         The ALJ's first justification is that Lopez Rosas's daily activities "indicate that he can do

7   more than he alleges."  *Id.*  Similarly, Lopez Rosas "continued to take care of his ex-wife, despite

8   his impairments."  *Id.*  According to the ALJ, Lopez Rosas testified that "[o]n a typical day, he

9   cleans the bathroom, sweeps the kitchen, trims the bushes, does cooking, dishes, laundry and

10  grocery shopping."  *Id.*  He also watches television, takes naps, goes to church and doctors'

11  appointments, feeds the pets, and mows the lawn.  *Id.*  Although it is true that Lopez Rosas admits

12  to engaging in all of these activities, the ALJ misrepresents the volume of activity in a "typical

13  day" by suggesting that he is engaged in multiple daily chores.  To the contrary, Lopez Rosas

14  explained at the ALJ hearing that he engages in only one hour—potentially one hour and 20

15  minutes worth—of household chores per day.  *Id.* at 687.  He sometimes engages in outdoor

16  chores, but only "every once in a while."  *Id.* at 688.  He also works a total of 30 hours per month

17  taking care of his ex-wife.  *Id.* at *671*.  At most, then, Lopez Rosas is engaged in just over two

18  hours of activity on any given day—one hour of chores, and one hour of caring for his ex-wife.

19  Lopez Rosas confirms his claims as to the volume of his daily activities in his Function Report.

20  *Id.* at 228-30.

21        The ALJ never acknowledges or responds to such evidence from Lopez Rosas.  She points

22  to no evidence in the record that Lopez Rosas works more hours per month or does more daily

23  chores than he alleges, and provides no reason for disbelieving him in this regard.  Nor does the

24  ALJ address or acknowledge Lopez Rosas's claims regarding the extent of his physical limitations

25  beyond her conclusion that they are exaggerated.  She thus improperly relies upon a

26  mischaracterization of Lopez Rosas's testimony in order to justify discounting it.  *See Garrison*,

27  759 F.3d at 1015-16 (ALJ improperly mischaracterized claimant's testimony regarding symptoms

28  by finding that it was "inconsistent[] with [claimant's] reported daily activities" without

acknowledging claimant's testimony that she was unable to engage in daily activities unless "heavily assisted by her mother.")

The Ninth Circuit has repeatedly stated that an ALJ cannot penalize someone claiming disability simply because that person has attempted to maintain some semblance of a normal daily life. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Shultz v. Colvin*, 32 F. Supp. 3d 1047, 1059 (N.D. Cal. 2014). Similarly, an ALJ "must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison,* 759 F.3d at 1016. I am not persuaded that Lopez Rosas's light daily schedule undermines his allegations about the intensity, persistence and limiting effects of his symptoms. To the contrary, his schedule actually bolsters his claims, because it is consistent with someone who cannot do chores without taking frequent rest breaks. AR 685, 688. I "may not affirm simply by isolating a specific quantum of supporting evidence," as the ALJ has done here. *Robbins*, 466 F.3d at 882.

The ALJ's next justification is that Lopez Rosas's "highest earnings were in 2008-2009." AR 21. It is not immediately evident how this evidence cuts against Lopez Rosas, and neither the ALJ nor the parties provide any further comment on this point. Presumably, the ALJ inferred that Lopez Rosas's high earnings, relative to previous years, were evidence of his ability to work and were therefore inconsistent with the claimed disability. Without conducting further inquiry, however, the ALJ has no principled basis upon which to rest that inference. An equally plausible—though equally speculative—conclusion would be that Lopez Rosas's relatively high earnings are instead indicative of an overly burdensome workload that ultimately contributed to his disability. Because the ALJ's assertion is completely speculative, it does not constitute a "clear and convincing" reason for discounting Mr. Lopez Rosas's testimony.

The ALJ next explains that Lopez Rosas "stopped working on October 30, 2010 because he was laid off, not because of his condition." AR 21. When asked about the layoff by the ALJ, Lopez Rosas explained that had he not been laid off, he would have quit because of his inability to

United States District Court
Northern District of California

1  work. *Id.* at 676.  The ALJ fails to acknowledge or respond to this explanation in her opinion, and

2  provides no basis for rejecting Lopez Rosas's testimony from the hearing.  Although the reason a

3  claimant stops working is an appropriate factor for an ALJ to consider when weighing a claimant's

4  credibility, *see Orn*, 495 F.3d at 636, it is not on its own the kind of "clear and convincing"

5  explanation necessary to justify discounting Lopez Rosas completely, especially in light of the

6  ALJ's failure to address Lopez Rosas's explanation.

7          Finally, the ALJ noted that Lopez Rosas "gave different reasons for why he stopped

8  working at the orthopedic and psychological CEs." *Id.*  Lopez Rosas correctly counters that the

9  ALJ's statement is only partially true, and is not an accurate restatement of the record.  Plaintiff's

10  Mot. at 22.  Although Dr. Cain writes in her report that Lopez Rosas was laid off, which Lopez

11  Rosas Rojas believed was due to his inability to work fast (AR 292, an explanation consistent with

12  both Lopez Rosas's testimony and his Function Report), Dr. Vesali's notes assert that Lopez

13  Rosas stopped working because of depression.  AR 295.  Dr. Vesali's notes do not, however,

14  establish how he came to that understanding.  Furthermore, to the extent the ALJ is insinuating

15  malingering by suggesting that Lopez Rosas was dishonest with Dr. Vesali, where an ALJ has not

16  made an affirmative finding of malingering, and where there is no evidence to suggest it, the ALJ

17  cannot rely on an implied accusation of malingering to discount a claimant's testimony. *Schultz v.*

18  *Colvin*, 32 F. Supp. 3d 1047, 1061 (N.D. Cal. 2014); *see also Greger v. Barnhart*, 464 F.3d 968,

19  975 (9th Cir. 2006); *see also Swenson v. Sullivan*, 876 F.2d 683, 688 (9th Cir. 1989).

20          In short, the ALJ relies upon mischaracterizations of Lopez Rosas's allegations,

21  speculation, and statements of fact not fully supported by the record to justify her credibility

22  determination.  Because these explanations cannot be "specific, clear and convincing," the ALJ

23  erred in discounting Lopez Rosas's credibility in terms of the intensity, persistence, and limiting

24  effects of his symptoms.

25          On remand, should the ALJ conclude that Lopez Rosas is not credible, she must (1)

26  specifically identify which of Lopez Rosas's statements regarding his symptoms she does not

27  believe, and (2) provide "clear and convincing" reasons for her conclusions.  Otherwise, the ALJ

28  must fully credit Lopez Rosas's allegations and incorporate them accordingly into the disability

1    inquiry.

2         **B.      Statements by Lopez Rosas's Ex-Wife.**

3         Lopez Rosas also argues that the ALJ erred in discounting the statements made by Lopez

4    Rosas's ex-wife.  Plaintiff's Mot. at 15.  "[L]ay testimony as to a claimant's symptoms or how an

5    impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded

6    without comment."  *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir.

7    2006) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) (internal quotation marks

8    omitted).  "Consequently, if the ALJ wishes to discount the testimony of lay witnesses, [s]he must

9    give reasons that are germane to each witness."  *Stout*, 454 F.3d at 1053 (quoting *Dodrill v.*

10   *Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)) (internal quotation marks omitted).

11        Following her discussion of Lopez Rosas's credibility, the ALJ next turned to the Function

12   Report submitted by Lopez Rosas's ex-wife, noting, "[t]his statement is generally credible as it

13   corroborates claimant's activities of daily living."  AR 22.  However, the ALJ goes on to state that

14   "as found above, the evidence shows that claimant is not as limited as [the lay witness] allege[s]."

15   AR 22.  In other words, in discrediting Lopez Rosas's ex-wife, the ALJ relies upon the same

16   flawed rationale she put forth in discrediting Lopez Rosas.

17        Admittedly, the law is much more deferential to an ALJ when weighing the credibility of a

18   lay witness, but the ALJ failed to satisfy this standard.  First, the ALJ noted that Lopez Rosas's

19   daily activities "indicate that he can do more than he alleges."  AR 21.  As examples, the ALJ

20   explained that Lopez Rosas "continued to take care of his ex-wife, despite his impairments," and

21   does multiple chores in a "typical day."  AR 21.  As established above, however, the ALJ

22   significantly inflates the extent and the volume of Lopez Rosas's daily activities.  Even under the

23   low standard requiring that an ALJ merely provide "germane" reasons, *Stout*, 454 F.3d at 1053,

24   the ALJ cannot justify discounting lay testimony based on a mischaracterization of the facts.

25        Next, the ALJ notes that Lopez Rosas's "highest earnings were in 2008-2009," but fails to

26   explain how this observation is relevant.  AR 21.  As I explained above, this observation gives rise

27   to two completely speculative but equally plausible inferences and the ALJ must explain why this

28   matters to her conclusion.  Even lay testimony "cannot be disregarded without comment."  *Stout*,

United States District Court
Northern District of California

15

454 F.3d at 1053.

Finally, the ALJ notes that Lopez Rosas "stopped working on October 30, 2010 because he was laid off, not because of his condition," and that he "gave different reasons for why he stopped working at the orthopedic and psychological CEs." AR 21. Neither of these observations, however, speaks to the credibility of Lopez Rosas's ex-wife. Indeed, her Function Report says nothing of the conditions under which Lopez Rosas retired or of the statements he gave to the examining doctors. To the extent that either of these observations represent inconsistencies in the record that raise credibility issues, they are relevant only to Lopez Rosas's credibility. Because an ALJ must provide "reasons that are germane *to each witness*," *Stout*, 454 F.3d at 1053 (emphasis added), these observations cannot suffice to discredit Lopez Rosas's ex-wife.

On remand, should the ALJ conclude that Lopez Rosas's ex-wife is not credible, she must provide germane reasons as to why she does not believe Lopez Rosas's ex-wife. Otherwise, the ALJ must fully credit the allegations and incorporate them accordingly into the disability inquiry.

## II.     THE ALJ DID NOT ERR IN DISCREDITING TESTIMONY FROM LOPEZ ROSAS'S TREATING PHYSICIAN AND PHYSICIAN'S ASSISTANT.

Lopez Rosas argues that the ALJ improperly discounted the opinion of the physician and physicians' assistant that treated him with respect to the scope of his mental limitations. Dkt. No. 18 at 9-15.

The Ninth Circuit distinguishes between three types of physicians that provide information about a claimant: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to greater weight than the opinion of a non-treating physician. *Id*; 20 C.F.R. § 404.1527(d)(2). However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citation omitted). In order to properly reject the opinion of a treating or examining doctor when it is uncontradicted by another doctor, the ALJ must state "clear and convincing reasons" for doing so.

United States District Court
Northern District of California

*Lester*, 81 F.3d at 830.  If the treating or examining physician's opinion is contradicted by another physician, however, an ALJ may reject the treating or examining physician's opinion if she states "specific and legitimate reasons" that are supported by substantial evidence.  *Id.* at 830-31.

Doctor Townsend and PA Adelman submitted a Medical Source Statement opining that Lopez Rosas has suffered a "substantial loss" of his ability to (1) "understand, remember, and carry out simple instructions"; (2) "make judgments that are commensurate with the functions of unskilled work"; (3) "respond appropriately to supervision, co-workers and usual work situations"; and (4) "deal with changes in a routine work setting."  AR 535.  Dr. Townsend and PA Adelman's opinions regarding Lopez Rosas's mental limitations were significantly contradicted in part by the report prepared by psychological consultative examiner, Dr. Cain, who found that Lopez Rosas can "understand, carry out, and remember simple instructions," and "respond appropriately to routine changes in the routine work setting as well as safety concerns."  AR 293.  Therefore, because Dr. Townsend and PA Adelman's testimony was contradicted by another physician, the ALJ may reject their opinion by stating "specific and legitimate reasons" that are supported by substantial evidence.  *Lester*, 81 F.3d at 830-31.

The ALJ granted Dr. Townsend and PA Adelman's opinion "partial weight," finding that they "exaggerate[d] the extent of claimant's mental limitations."  AR 25.  In justifying this determination, the ALJ said:

> [T]he treatment notes and claimant's significant activities of daily living do not support these substantial limitations.  Mara Adelman, P.A., is a physician's assistant, which is not an acceptable medical source.  Also, Dr. Townsend is a family practitioner, not a psychiatrist or psychologist.  In any event, this has been taken into account in the above RFC, which limits claimant to unskilled work.

*Id* (citations omitted).

First, the ALJ stated that the "treatment notes . . . do not support these substantial limitations."  AR 25.  But without additional elaboration as to what inconsistencies the ALJ relies upon within the 84 pages of treatment notes provided by PA Adelman and Dr. Townsend, AR 340-394, 582-612, this cannot be considered a "specific" reason.

Next, the ALJ stated that Lopez Rosas's "significant activities of daily living do not

United States District Court
Northern District of California

1    support these substantial limitations."  As established in the preceding section regarding Lopez

2    Rosas's own testimony, however, the ALJ mischaracterizes the nature of Lopez Rosas's daily

3    activities when she refers to them as "significant."  This is therefore an inadequate reason for

4    discounting the treating physician's testimony.

5         The ALJ also stated that because PA Adelman is not a physician, she is not an "acceptable

6    medical source."  AR 25; 20 C.F.R. § 416.913 (defining "acceptable medical sources" versus

7    "other sources," which include physicians' assistants).  But this argument ignores the fact that PA

8    Adelman was not the sole provider of the opinion—Dr. Townsend also signed the Medical Source

9    Statement.  The Ninth Circuit has held that although a nurse practitioner working alone does not

10   constitute an acceptable medical source, a nurse practitioner working under a physician constitutes

11   an acceptable medical source.  *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Taylor v.*

12   *Commissioner of Social Security Administration.*, 659 F.3d 1228, 1234 (9th Cir. 2011).[5]

13   "Critically, [the doctor's] endorsement establishes that [the nurse practitioner] worked in

14   conjunction with a treating physician."  *Green v. Colvin*, No. 13-cv-05105-WHO, 2014 WL

15   6066187, at *9 (N.D. Cal. Nov. 13, 2014).  The parties do not address these cases and the record

16   does not reflect the relationship between PA Adelman and Dr. Townsend in terms of supervision,

17   but even if the ALJ erred in discounting the opinion of PA Adelman, any error would be harmless

18   as discussed below.

19        While the above reasons given by the ALJ lack merit, she provides an additional argument

20   that, taken in light of Dr. Cain's contradictory testimony, constitutes a "specific and legitimate

21   reason" for discounting the testimony of Dr. Townsend and PA Adelman.  The ALJ notes that Dr.

22   Townsend is family practitioner, and "not a psychiatrist or psychologist" like Dr. Cain.  AR 25; 20

23   C.F.R. § 404.1527(c)(5) (The agency "generally give[s] more weight to the opinion of a specialist

24   about medical issues related to his or her area of specialty than to the opinion of a source who is

25

26   _____

     [5] In *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), the Ninth Circuit preserved *Gomez's*
     narrow exception allowing nurse practitioners to be treated as acceptable medical sources when
27   they work closely under the supervision of a doctor, despite the repeal of 20 C.F.R. §
     416.913(a)(6), which the *Gomez* court partially relied upon and which provided that "[a] report of
28   an interdisciplinary team that contains the evaluation and signature of an acceptable medical
     source is also considered acceptable medical evidence."

United States District Court
Northern District of California

United States District Court
Northern District of California

not a specialist").  Lopez Rosas responds that the Ninth Circuit's decision in *Lester* explicitly prohibits an ALJ from discounting a treating physician's opinion regarding a claimant's mental limitations solely on the basis that the treating physician is not a mental health specialist.  Dkt. No. 18 at 10-11 (citing *Lester*, 81 F.3d at 833).  But *Lester* differs from the instant case in one significant respect.  In *Lester*, the ALJ was not presented with any conflicting opinions from other examining psychologists; rather, the SSA's own examining psychologist agreed with and substantiated the treating physician's opinion regarding that claimant's mental limitations.  *Id.* at 831-32.  Here, on the other hand, Dr. Cain also examined Lopez Rosas and significantly contradicted Dr. Townsend and PA Adelman's opinion with respect to Lopez Rosas's mental limitations.  AR 293, 535.  In fact, the *Lester* court noted a similar distinction when it declined to follow another case where the ALJ was found to have properly discounted an examining physician's testimony because he was not a mental health expert.  *Id.* at 831 (discussing *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (9th Cir.1995), where the examining physician's opinion was properly discounted because it conflicted with multiple non-examining mental health professionals).

The ALJ was justified in discounting PA Adelman and Dr. Townsend's opinion regarding the extent of Lopez Rosas's mental limitations because neither PA Adelman nor Dr. Townsend were mental health experts, and they were contradicted by an examining psychologist.

### III.   THE ALJ ERRED IN FAILING TO INCLUDE IN THE VOCATIONAL HYPOTHETICAL THE ALJ'S OWN FINDINGS THAT LOPEZ ROSAS HAS MODERATE DEFICITS IN CONCENTRATION, PERSISTENCE, AND PACE, AND THAT LOPEZ ROSAS IS ILLITERATE.

Lopez Rosas argues the ALJ erred in first finding that he has moderate difficulty with concentration, persistence, and pace, but then failing to include that finding in the hypothetical question posed to the vocational expert.  Dkt. No. 18 at 18.  Lopez Rosas makes the same argument with respect to the ALJ's finding that he is illiterate.  Dkt. No. 18 at 16.

### A.   The ALJ's Finding of Moderate Deficits in Concentration, Persistence, and Pace.

"A hypothetical question posed to a vocational expert must 'include all of the claimant's functional limitations, both physical and mental.'"  *Brink v. Comm'r Soc. Sec. Admin.*, 343 F.

App'x 211, 212 (9th Cir. 2009) (unpublished) (citing *Flores v. Shalala,* 49 F.3d 562, 570 (9th Cir. 1995)).  In *Brink*, the ALJ first found that the claimant had "moderate difficulty maintaining concentration, persistence, or pace," but then failed to reference such limitations in the hypothetical question posed to the vocational expert. 343 F. App'x at 212.  Instead, the only cognizable mental limitation the ALJ included was that the claimant was limited to "simple, repetitive work." *Id.*  In finding that the phrase "simple, repetitive work" did not encompass the ALJ's broader findings of moderate limitations in concentration, persistence, and pace, the court noted that "repetitive, assembly-line work of the type described by the expert might well require extensive focus or speed" not contemplated by the ALJ's hypothetical. *Id.*

Here, the ALJ committed the same error.  Despite finding that "[w]ith regard to concentration, persistence or pace, [Lopez Rosas] has moderate difficulties," AR 19, the only mental limitation the ALJ included in the hypothetical question was for "simple, routine, repetitive tasks." AR 694.  The vocational expert was therefore unable to consider the full range of Lopez Rosas's limitations when she suggested that Lopez Rosas was capable of performing the jobs of "hand packer," "grocery bagger," and "sandwich maker," AR 26, 694-95, all of which may require "repetitive, assembly-line work" that "might well require extensive focus or speed" not contemplated by the hypothetical question. *See Brink*, 343 F. App'x at 212.

Lopez Rosas relies exclusively on *Brink*, yet the Commissioner fails to address *Brink* in her cross-motion.  Instead, she makes an argument explicitly rejected in *Brink* by claiming that the ALJ's hypothetical limitation to "simple, routine, repetitive tasks" was inclusive of the ALJ's findings regarding concentration, persistence, and pace.  Defendant's Mot. at 7-8; *see Brink*, 343 F. App'x at 212 (rejecting as "not persuasive" the "contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace").  The Commissioner cites *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007), in support of her proposition, Defendant's Mot. at 7-8, but *Hoopai* is inapposite because it does not address what an ALJ must include in a hypothetical posed to a vocational expert; rather, the *Hoopai* court considered whether an ALJ must consult a vocational expert at all at step five as opposed to relying on the SSA's Medical-Vocational Guidelines ("grids"). *Id.* at 1075.  An ALJ may rely upon the grids in lieu of a

20

1   vocational expert "only when the grids accurately and completely describe the claimant's abilities

2   and limitations." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal citation and

3   quotation marks omitted). "[T]he grids are inapplicable when a claimant's non-exertional

4   limitations are sufficiently severe so as to significantly limit the range of work permitted by the

5   claimant's exertional limitations." *Hoopai*, 499 F.3d at 1075 (citing *Burkhart*, 856 F.2d at 1340)

6   (internal quotation marks omitted). The *Hoopai* court determined that the ALJ was justified in

7   relying upon the grids despite the ALJ's own finding that medical evidence of moderate

8   depression constituted a severe non-exertional limitation at step two. *Id.* at 1076-77. But whether

9   the grids as used by the ALJ in *Hoopai* "accurately and completely describe[d] [Hoopai's] abilities

10  and limitations" has no bearing on whether the ALJ in this case properly crafted her hypothetical

11  to the vocational expert. Notably, the ALJ in this case specifically found that the grids were

12  inapplicable to Lopez Rosas's claim in light of his limitations, and thus consulted a vocational

13  expert as required. AR 25-26.

14       Similarly, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), which held that an

15  "assessment of a claimant adequately captures restrictions related to concentration, persistence, or

16  pace where the assessment is consistent with the restrictions identified in the medical testimony,"

17  *id.* at 1174, is also inapposite because it did not address the question of whether an ALJ must

18  incorporate her own findings into a vocational hypothetical. Rather, at issue in *Stubbs-Danielson*

19  was whether the ALJ erred by failing to include in the vocational hypothetical limitations in

20  concentration, persistence, and pace that were both supported and contradicted by medical

21  evidence in the record. *See id.* at 1173-74; *see also Brink*, 343 F. Appx. at 212 (finding that the

22  medical evidence in *Stubbs-Danielson* "did not establish any limitations in concentration,

23  persistence, or pace"). Importantly, the *Stubbs-Danielson* ALJ made no findings as to that

24  claimant's limitations in concentration, persistence, and pace. *See Stubbs-Danielson*, 539 F.3d at

25  1174. In *Brink*, on the other hand, "the medical evidence establishes, as the ALJ accepted, that

26  Brink does have difficulties with concentration, persistence, or pace." *Brink*, 343 F. Appx. at 212.

27  Similarly, here, the ALJ relied upon the statements and testimony provided by Lopez Rosas and

28  his ex-wife to explicitly find that Lopez-Rosas has "moderate difficulties" with concentration,

persistence, and pace.  AR 19.  It was thus error for the ALJ to exclude from the vocational hypothetical mental limitations she found to be supported by the record.

On remand, the ALJ must clarify her hypothetical so the vocational expert may appropriately determine whether Lopez Rosas is capable of performing work existing in the national economy.

**B.  The ALJ's Finding that Lopez Rosas is Illiterate.**

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles" ("DOT").  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).  When determining whether a claimant is capable of doing work that exists in the national economy, an ALJ may only rely on the testimony of a vocational expert that deviates from DOT standards if the record contains "persuasive evidence" to support the deviation.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ must "definitively explain this deviation."  *Pinto*, 249 F.3d at 847.

Here, the ALJ found that Lopez Rosas "is illiterate and is able to communicate in English," AR 25, but indicated in the hypothetical to the vocational expert that Lopez Rosas has "limited ability . . . to understand and communicate in English," without also highlighting her finding that Lopez Rosas is illiterate.  AR 693-94.  The vocational expert ultimately found that Lopez Rosas was capable of working as a hand packer, DOT § 920.587-018, grocery bagger, DOT § 920.687-014, and sandwich maker, DOT § 317.664-010; AR 694-95, all with a DOT language level of one, defined as:

> Reading: Recognize meaning of 2,500 (two- or three- syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

> Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

> Speaking: Speak simple sentences, using normal word order, and present and past tenses.

DOT Appendix C.

The ALJ erred by relying upon expert testimony that deviated from the DOT literacy standards, which require basic reading and writing, without explaining the deviation.  She did not

United States District Court
Northern District of California

22

1   ask the VE about her own conclusion of Lopez Rosas's illiteracy.  There is no evidence about

2   Lopez Rosas's ability to read 2,500 words in English as required by DOT Language Level 1.  On

3   remand, the ALJ must either ask the vocational expert a hypothetical that conforms to the DOT or

4   explain what persuasive evidence supports deviating from the DOT.

5                                               **CONCLUSION**

6          Plaintiff's motion is GRANTED, defendant's motion is DENIED, and the action is

7   REMANDED for further proceedings consistent with this order.

8

9          **IT IS SO ORDERED**.

10  Dated: December 28, 2015

11

12                                              WILLIAM H. ORRICK
                                                United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

23